AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   19-MJ-*8188*-DLB |
| Donald Nehemiah Watson | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED BY _SP_ D.C.

MAY 07 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 6, 2019 _____ in the county of _Palm Beach and elsewhere_ in the _Southern_ District of _Florida_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code, Section 1324(a)(1)(A)(i) | The defendant brought an alien into the United States at a place other than a designated port of entry or place other than as designated by the Commissioner; and |
| Title 18, United States Code, Section 2237(a)(1) | The defendant, upon the high seas, failed to heave to when commanded to do so by a federal agent. |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Xavier Martinez, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 05/07/2019 _____

_____
*Judge's signature*

City and state: _____ West Palm Beach, Florida _____

Hon. Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Xavier Martinez, being first duly sworn on oath, deposes and says:

1.      I am a Special Agent in the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI) for the office of the Assistant Special Agent in Charge (ASAC) in West Palm Beach, FL. I have been a Special Agent of (HSI) and its predecessor, the Office of Investigations (OI) for the past 9 years. As an HSI Special Agent, part of my duties entails the investigation of individuals who illegally enter into the United States as well as the unlawful bringing in of aliens.

2.      Due to this experience and training, I am familiar with common routes and methods employed by those seeking to smuggle aliens and contraband in the United States.

3.      I obtained the following information through personal observations, and from other law enforcement officers who are familiar with this investigation.

4.      Due to the limited scope of this document, I have not included in this affidavit all facts known to investigators at this time. I have only included facts sufficient to show that probable cause exists to believe that the target of this investigation is engaged in the criminal activity described herein and sufficient to establish probable cause to use the investigative techniques set forth herein.

## FACTUAL BACKGROUND

5.      On May 6, 2019, at approximately 2:00 a.m., members of the Palm Beach Sheriffs Marine Enforcement Unit (hereinafter MEU) spotted a target of interest (hereinafter TOI) on their radar system. Onboard the MEU vessel were officers with the Palm Beach Sheriff's Office as well as United States Border Patrol (USBP) Agent Miguel Esteves. After seeing the TOI on the radar, they navigated towards its location. As they neared the TOI's location they noticed a

blinking white light to the west of the MEU.  The MEU then identified the TOI when they came within approximately 100 yards of it (approximate location N26 43.00 W-80 01.00) and confirmed that it had no navigation lights turned on.  This location is approximately 1 mile east of The Breakers Hotel in Palm Beach, FL.  At that point the MEU activated their emergency equipment (blue lights and siren) directing the TOI to stop.  The TOI then increased its speed and drove in an evasive manner.  The MEU pursued the TOI and requested further assistance from the Palm Beach Sheriff's Office and the United States Coast Guard (USCG).  Officers were able to observe that the TOI was displaying a vessel registration number of NP013085 and markings indicating that the TOI was a 21 foot "Wahoo".  Officers also observed that onboard there were two black males. The driver of the boat was observed wearing all black clothing; the second male was wearing jeans and a black shirt.

6.      MEU continued to pursue the TOI.  The TOI continued to evade the MEU and was traveling east (offshore).  PBSO Air Support (AS) was able to join the pursuit and confirmed that the TOI was occupied by two males.  Approximately 5 minutes later, USCG arrived on scene and took over as the primary pursuit vessel and activated its lights and siren, in an effort to get the TOI to stop.  The pursuit continued for another 5 minutes and then the TOI ran out of fuel at approximately 0247 hours (approximate location N 26 42.048, W -79 47.632).  The USCG was able to then take custody of the two individuals on the TOI.  Once in custody, USBP Agent Esteves interviewed them and determined that they were both Bahamian nationals.  The individual who was observed driving the boat self-identified as Donald Nehemiah WATSON with a date of birth of July 17, 1983.  WATSON also provided Agent Esteves a Bahamian identification document bearing the same name.  The passenger identified himself as Walner Nathaniel Lumber with a date of birth of October 05, 1995.  During the interview, Agent Esteves was told by the individuals that

they had left Freeport Bahamas and were doing a test run on the vessel and when they noticed they were running out of fuel they decided to head to West Palm Beach to re-fuel before heading back to the Bahamas.

7.      Agent Esteves observed a black bag on the deck of the TOI and asked WATSON and Lumber to whom it belonged.  Both men stated that the bag was already on the boat when they boarded it and that it did not belong to either of them.  As the bag was taken from the TOI to the patrol vessel, a Bahamian passport fell out of it.  Upon inspection, Agent Esteves noticed that the passport had a photo matching Lumber but it listed his name as Travis Jamaal MOSS and date of birth of January 26, 1995.  Post arrest processing performed by USBP agents revealed that the passenger who initially identified himself as Walner Nathaniel Lumber was actually Travis Jamaal MOSS and that he had been previously deported in 2014.

8.      The TOI was towed by PBSO to the USCG station located at 3300 Lakeshore Drive, Riviera Beach, FL 33404.  Once at the USCG station, the TOI was searched, and an additional identification document was found bearing MOSS' photo and name as well as a black Alcatel smart phone.  At the USCG station, the black bag was further inspected and was found to contain three credit card encoding devices along with seventeen cards.   Ten out of the seventeen cards were found to be access cards, which could be uploaded with information using the encoders.  The cards were wrapped with a copy of MOSS' Bahamian voter registration card.

9.      At approximately 1436 hours, WATSON was interviewed at the USBP station after he was read is ICE statement of rights form in English.  WATSON explained to investigators that he understood his rights and was willing to answer questions.  WATSON also signed the rights form.  WATSON explained that he was tasked to bring TOI to Freeport and that it was going to be used to transport MOSS to the United States.  WATSON explained that he was hired to do this

by a man he knows as "Rasta". He explained that the TOI was going to be driven by an unknown person but when that person backed out, "Rasta" asked WATSON to drive the boat with MOSS to the United States. WATSON stated that he was not sure how much he was going to receive for this trip, but he thought it was in the range of approximately $8,000 USD. WATSON explained that they left Freeport at approximately 1600 hours on May 5, 2019 and that MOSS entered a waypoint in the GPS and set it as their destination. When the TOI was previously searched, agents took a photograph of the GPS screen that showed the GPS waypoint. WATSON confirmed the photo and he confirmed that was the destination that MOSS had inputted into the GPS. The waypoint is located just off the coast of West Palm Beach, FL.

      10.    WATSON explained that when the patrol vessel initially encountered and turned on their emergency lights and siren, his reaction was to flee. He explained that he understood he was involved in illegal activity and evaded arrest by driving the boat east for approximately 20 minutes. WATSON also admitted knowingly attempting to bring MOSS unlawfully into the United States.

      11.    Based upon the forgoing, I submit there is probable cause to believe that on or about May 6, 2019, upon the high seas and out of the jurisdiction of any particular State or district, and elsewhere, within Palm Beach County, in the Southern District of Florida, Donald WATSON brought an alien into the Unites States at a place other than a designated port of entry or place other than as designated by the Commissioner in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i). In addition, there is probable cause to believe that on or about May 6, 2019, upon the high seas and out of the jurisdiction of any particular State or district, and elsewhere, within Palm Beach County, in the Southern District of Florida, Donald WATSON failed to heave

when commanded to do so by a federal agent in violation Title 18, United States Code, Section

2237(a)(1).


FURTHER YOUR AFFIANT SAYETH NAUGHT.

Special Agent Xavier A. Martinez
Homeland Security Investigations

Subscribed and sworn to before me
this 7 day of May, 2019.

Dave Lee Brannon
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  DONALD NEHEMIAH WATSON**

**Case No:**   *19-mj-8188-DLB*

Count #: 1

Alien Smuggling for Financial Gain

Title 8, United States Code, Section 1324(a)(1)(A)(i)

**\*Max. Penalty:**   10 years' imprisonment, 3 years supervised release, $250,000 fine, $100 special assessment

Count #: 2

Failure to Heave

Title 18, United States Code, Section 2237(a)(1)

**\*Max. Penalty:**   5 years' imprisonment, 3 years supervised release, $250,000 fine, $100 special assessment

**\*Refers only to possible term of incarceration, does not include possible restitution, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 19-MJ- *8188* -DLB

## BOND RECOMMENDATION

DEFENDANT: Donald Nehemiah Watson

Pre-Trial Detention

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: *Gregory Schiller*

AUSA:   Gregory Schiller

Last Known Address: _____

_____

_____

What Facility:   Palm Beach County  Jail

_____

Agent(s):   HSI Xavier A. Martinez

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

No.        19-MJ- *8188* -DLB

UNITED STATES OF AMERICA

V.

Donald Nehemiah Watson,

_____/

FILED BY_____ D.C.

MAY 07 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COVER SHEET

1.   Did this matter originate from a matter pending in the Northern Region of the United
     States Attorney's Office prior to October 14, 2003? _____ Yes ___x__ No

2.   Did this matter originate from a matter pending in the Central Region of the United States
     Attorney's Office prior to September 1, 2007? _____ Yes ___x__ No

Respectfully Submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   */s/ Gregory Schiller* _____
      GREGORY SCHILLER
      Assistant United States Attorney
      Florida Bar No. 0648477
      U.S. ATTORNEY'S OFFICE - SDFL
      500 S. Australian Ave.,
      West Palm Beach, FL 33401
      (561) 209-1045
      Gregory.Schiller@usdoj.gov